ABBEY SPANIER RODD ABRAMS
 & PARADIS, LLP
Arthur N. Abbey
Stephen T. Rodd
Orin Kurtz
212 East 39th Street
New York, New York 10016
(212) 889-3700

MCLAUGHLIN & STERN, LLP
Alan E. Sash (AS-8804)
260 Madison Avenue
New York, New York 10016
Tel: 212-448-1100
Fax: 212-448-0066

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA TINKER, GAIL BRYAN, SUSAN HANCE-GOODMAN, CRYSTAL WARD, DARLENE WARD, ALEXANDRA STARKEY, WILLIAM MCMAHON, KAROLE VANDUSEN, and MARJORIE READY, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENU FOODS, INC., MENU FOODS INCOME FUND, and CHEMNUTRA, INC.,<br><br>Defendants. | Civil Action No. 07-CV-1468 (NLH)<br><br>AMENDED CLASS ACTION COMPLAINT FOR CONSUMER FRAUD<br><br>**JURY TRIAL DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND**

Plaintiffs Linda Tinker, Gail Bryan, Susan Hance-Goodman, Crystal Ward,

Darlene Ward, Alexandra Starkey, William McMahon, Karole VanDusen and Marjorie

Ready ("Plaintiffs") bring this class action complaint against defendants Menu Foods,

Inc. and Menu Foods Income Fund (collectively with Menu Foods, Inc, "Menu Foods") and ChemNutra, Inc. ("ChemNutra," together with Menu Foods "Defendants"), to seek redress for themselves and all others whose dogs and/or cats were injured by consumption of contaminated food manufactured and sold by Defendants.

## NATURE OF THE CASE

1. Defendants knowingly and intentionally sold contaminated pet food that was causing acute renal failure in dogs and cats. Menu Foods has admitted that it knew of such harm as early as February 20, 2007 and did not announce a recall to the public until nearly a month later, on March 16, 2007 (although news reports state that Defendants received complaints about their food as early as December 2006). ChemNutra knew of the contamination eight days before the March 16, 2007 recall. Thus, thousands of animals died while Defendants continued to profit from the sale of contaminated pet food. On March 23, 2007, ABC News reported that a chemical found in rat poison—nonetheless rat poison that is illegal in the United States—was to blame for the contamination that was killing and continues to kill animals. The chemical is called aminopterin. More recently, the United States Food and Drug Administration (the "FDA") determined that Melamine, a toxic chemical, was to blame for the contamination. While the authorities have not yet agreed on which substance (if not both) was in the recalled pet food, there is no doubt that Defendants' pet food was contaminated and poisoned animals.

2. On March 16, 2007, Menu Foods announced that it was recalling nearly one hundred brands of dog and cat food that it had manufactured at its facilities in

Emporia, Kansas and Pennsauken, New Jersey, as a result of consumer complaints that, after consuming those brands of food, dogs and cats had died from acute renal failure.

3. According to the FDA, Menu Foods waited nearly one month after it became aware that animals were dying from their product to announce the recall. Menu Foods received several complaints from consumers on and after February 20, 2007. Beginning on February 27, 2007, Menu Foods performed internal testing and fed its food to between forty and fifty animals. On March 2, 2007, the first of those animals exhibited signs of kidney failure and died and eight more died soon thereafter. Menu Foods also continued to receive complaints that animals were suffering from acute renal failure as a result of eating its food. Menu Foods notified ChemNutra of the contamination eight days before the recall. However, Menu Foods did not announce the recall until March 16, 2007. In that time, while Defendants continued to profit, animals were sickened and killed by contaminated pet food. Plaintiffs and the class were damaged as a result of Menu Foods' deliberate sale of unsafe pet food.

4. After performing its own testing, on March 30, 2007, the FDA reported that it had found Melamine, a chemical used to make plastic, in Defendants' pet food.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because Plaintiffs are citizens of a different state than Defendants Menu Foods, Inc. and ChemNutra, and because Menu Foods Income Fund is a foreign corporation, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendant is a New Jersey corporation.

## THE PARTIES

7.     Plaintiff Linda Tinker is, and at all times relevant to this Action, has been a California resident. Plaintiff purchased Special Kitty Select pet food for her cat, Boots, at Wal-Mart in Paso Robles, California on dates including but not limited to January 25, 2007, February 4, 2007 and February 21, 2007. After consuming the Special Kitty Select pet food, Boots became ill on February 25, 2007. Boots refused food, vomited, began to drink abnormally large amounts of water, and had abnormally frequent urinations. Boots suffered from severe renal failure, as diagnosed by a veterinarian, and had to be euthanized on February 27, 2007. Plaintiff called Defendant to complain on March 16, 2007. Plaintiff has since taken her other cat, Baxter, for tests to determine whether Baxter was harmed by the Special Kitty Select.

8.     Plaintiff Gail Bryan is, and at all times relevant to this Action, has been a Pennsylvania resident. Plaintiff purchased Ol Roy dog food from Wal-Mart in Mill Hall, Pennsylvania. Plaintiff also purchased Weis Total Pet from Weis Markets in Lock Haven, Pennsylvania. After consuming these foods, each of which was recalled by Menu Foods, Plaintiff's dog Cody began having difficulty walking and was vomiting anything he ate. Cody also began to drink abnormally large amounts of water. Plaintiff's veterinarian said Cody was exhibiting signs of acute renal failure. Cody died from acute renal failure on March 10, 2007. After the recall was announced, Plaintiff contacted Menu Foods to complain, and, as of the date of this Amended Complaint has received no reply.

9.     Plaintiff Susan Hance-Goodman is, and at all times relevant to this Action, has been a resident of New York. Plaintiff purchased Iams Flakes with Salmon in Sauce,

and Iams Flakes with Tuna & Ocean White Fish in Sauce, each of which were recalled by Menu Foods, from Wal-Mart in Centereach, New York on March 4, 2007. Plaintiff fed this food to her two cats, Pumpkin and Oscar. After consuming the food, Plaintiff's cats became ill. Pumpkin died, and Plaintiff took Oscar to the emergency room, where he was diagnosed with acute renal failure. He was euthanized.

10. Plaintiffs Crystal Ward and Darlene Ward are, and at all times relevant to this Action, have been residents of South Carolina. Plaintiffs purchased Special Kitty pouches containing chicken and gravy cat food from Wal-Mart in Rock Hill, South Carolina and York, South Carolina on or about February 9, 2007. This cat food was recalled by Menu Foods. After consuming this food, Plaintiffs' cat Alley became ill. Alley was euthanized due to acute kidney failure on March 21, 2007.

11. Plaintiffs Alexandra Starkey and William McMahon are, and at all times relevant to this Action, have been residents of New York. Plaintiffs purchased Nutro Natural Choice at Pet Supplies Plus in Hempstead, New York in January, 2007. This cat food was recalled by Menu Foods. After consuming the cat food, Plaintiffs' cat Pickles became sick and eventually died. Plaintiffs' veterinarian said that Pickles' symptoms and blood test results "pointed in the direction of rat poison." Plaintiffs contacted Menu Foods to complain, and were told they would receive a "package" from Menu Foods, which they have not received as of the date of this Amended Complaint.

12. Plaintiff Karole VanDusen is, and all times relevant to this Action, has been a resident of New York. Plaintiff purchased Special Kitty Wild Duck and Rice Formula at Wal-Mart in Newark, New York. This cat food was recalled by Menu Foods. After consuming the cat food, Plaintiff's cat became ill. Plaintiff's vet diagnosed the cat

as having acute renal failure, and the cat was euthanized. Plaintiff contacted Menu Foods to complain and received one call back, after which Plaintiff received no further calls.

13. Plaintiff Marjorie Ready is, and all times relevant to this Action, has been a resident of Massachusetts. Plaintiff purchased Special Kitty cat food on November 13, 2006, November 22, 2006, December 9, 2006, January 9, 2007, January 24, 2007, and February 20, 2007. Plaintiff purchased the Special Kitty cat food at Wal-Mart, which was located within the state of Massachusetts. After consuming the Special Kitty cat food, Plaintiff's cat Rumtum ("Rummy") became ill. Rummy began to vomit, and went through several bouts of vomiting. On March 5, 2007, Plaintiff took Rummy to the veterinarian. Before Rummy was even removed from his cage at the veterinarian's office, Rummy urinated and defecated in his carrying box. He also vomited a blood-tinged foam. The veterinarian assumed that Rummy had ingested something toxic, such as antifreeze, and diagnosed Rummy with kidney failure. After receiving intravenous fluids for two days, the veterinarian suggested that Rummy should be euthanized. Plaintiff refused, and took Rummy home. Miraculously, Rummy recovered and, on March 19, 2007, the veterinarian determined that Rummy's kidneys were once again functioning.

14. At all times relevant to this Action, Defendant Menu Foods, Inc. was and is a New Jersey corporation, with its principle place of business located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a major manufacturer of "wet food" for dogs and cats. Defendant manufactures dog and cat food, which are sold under the names of a number of national retailers such as Wal-Mart, Safeway, Kroger and other store brands. Defendant manufactures pet foods for 17 of the

top 20 North American retailers and is also a contract manufacturer for the top branded food companies, including Proctor & Gamble Co. Defendant's food is sold, among other names, under the Iams and Eukanuba brands. Defendant's three U.S. and one Canadian factory produce more than 1 billion cans of wet food per year.

15. Defendant Menu Foods Income Fund is the majority owner of Menu Foods, Inc. Menu Foods Income Fund is based in Ontario, Canada.

16. Defendant ChemNutra, Inc. ("ChemNutra") is a Nevada corporation. ChemNutra is headquartered at 810 S. Durango Drive, Las Vegas, Nevada 89145. ChemNutra imports over 4,000 tons per year of food ingredients including wheat gluten. ChemNutra supplied the contaminated Chinese wheat gluten that sickened and killed the pets of Plaintiffs and the Class by its inclusion in Menu Foods products. Recently, ChemNutra posted a letter on its web site, from its C.E.O Steve Miller. In that letter, Mr. Miller stated that ChemNutra is "appalled and distressed that Menu Foods took so long to recall its products, although it clearly suspected there was a problem for weeks prior to the first recall."

17. Defendants Menu Foods Income Fund and Menu Foods are collectively referred to herein as "Menu Foods," and together with ChemNutra, "Defendants." Plaintiffs Linda Tinker, Gail Bryan, Susan Hance-Goodman, Crystal Ward, Darlene Ward, Alexandra Starkey, William McMahon, Karole VanDusen and Marjorie Ready are collectively referred to herein as "Plaintiffs."

## SUBSTANTIVE ALLEGATIONS

18. On February 20, 2007, Menu Foods received the first of several consumer complaints regarding their products.

19. On February 27, 2007, Menu Foods began to test the safety of their pet foods by performing a "taste trial" on its own animals. Menu Foods performed the "taste trial" by feeding the contaminated food to between forty and fifty dogs and cats. The tests killed nine of Menu Foods' own animals.

20. The first animal to die as a result of Menu Foods' test was a cat, which exhibited signs of kidney failure and died on March 2, 2007—two weeks before Menu Foods announced the recall.

21. Subsequently, eight more of Menu Foods' cats died from eating Menu Foods' products.

22. Thus, nearly twenty percent of the animals that ate Menu Foods' "cuts and gravy" food—at least nine of forty to fifty animals given the food by Menu Foods—died after eating that food.

23. However, in the following weeks, Defendants continued to sell and profit from the contaminated pet food while animals throughout the country continued to suffer acute renal failure and die from eating Defendants' food.

24. Finally, on March 16, 2007, Menu Foods announced that it was recalling all of its "cuts and gravy" style dog and cat food produced at its facilities in Emporia, Kansas, and New Jersey between December 3, 2006 and March 6, 2007. Menu Foods recalled fifty-three brands of dog food and forty-two brands of cat food. The list of recalled products, which has now been expanded to forty-seven brands of cat food and fifty-four brands of dog food, is attached to this Complaint as Exhibit A.

25. The list of foods recalled was extensive and encompassed nearly 60 million cans and pouches of pet food.

26. Panic ensued among pet owners as they looked at the list and saw that their pets had eaten the now-recalled brands of food.

27. According to MSNBC, the Animal Medical Center in Manhattan tested 143 animals for kidney failure between March 17, 2007 and March 21, 2007. Of those, ten were confirmed to be diet-related cases, and one cat died.

28. According to the New York Times, Lisa Moses, a staff veterinarian at Angell Animal Medical Center-Boston said the emergency room had been "flooded" with pet owners who were worried that their animals may suffer acute renal failure as a result of consuming contaminated food manufactured by Defendants. Angell Animal Medical Center said that one cat had died and two dogs had been stricken with kidney failure in the last week and that it was reviewing all renal cases it had seen in the last few months.

29. "People are panic-sticken," Dr. Moses told the Times. "This is really scary, and I don't blame them."

30. After the recall, the FDA sent inspectors to Menu Foods' manufacturing plants in Kansas and New Jersey.

31. On March 21, 2007, Menu Foods stated that it could not determine exactly what about its food caused pets to suffer kidney failure.

32. In an interview with the Associated Press, Paul Henderson, the Chief Executive and President of Menu Foods, Inc. said Menu Foods was looking at a single ingredient as the cause of acute kidney failure in animals that had eaten food manufactured by Menu Foods. Mr. Henderson would not identify the single ingredient, but the FDA said the investigation was focusing on wheat gluten, a protein source used to thicken the "gravy" in wet pet food.

33. According to the New York Times, Menu Foods and the FDA have said the acute kidney failure in animals had coincided with the timing of the Company's use of a new wheat gluten supplier.

34. Finally, on March 23, 2007, ABC news reported that investigators determined that a rodent-killing chemical that had made its way into the wheat gluten—aminopterin—is the toxin in the tainted pet food that killed the animals.

35. According ABC News, the Animal Medical Center and other veterinarians learned of an additional 200 reported cases of kidney failure in animals and suspected there will be a "much larger rash of cases." As of the date of the filing of this complaint, Menu Foods have stated that it received nearly 200,000 calls from consumers regarding the tainted pet food, and estimates of animals injured or killed range well into the thousands. Banfield, The Pet Hospital, which has worked with the FDA in its investigation regarding Menu Foods' recall, has estimated that as many as 39,000 pets have become ill or died as a result of consuming Defendants' recalled pet food.

36. Veterinarians at the Animal Medical Center, which according to ABC News is considered the "Mayo Clinic" of veterinary medicine, traced the kidney failure back to the 60 million cans and pouches of recalled food from Menu Foods.

37. "I was shocked and surprised—acute kidney failure is not a common problem," veterinarian Cathy Langston told ABC News shortly after the recall. "I've already heard about 200 cases, and so I bet there are probably going to be thousands."

38. However, the story does not end here. On March 30, 2007, the FDA announced that it had not found rat poison in Menu Foods' products, but rather that it had found Melamine, a toxic substance that is used to manufacture plastic. Menu Foods, in a

press conference on that same day, said that the Melamine was found in the same suspect wheat gluten, supplied to Menu Foods by the same company, as that in which the rat poison had been found.

39.     The company that supplied the wheat gluten was ChemNutra. Chem Nutra had outsourced the production of the wheat for the gluten to China.

## SUBSEQUENT DEVELOPMENTS

40.     On April 5, 2007, Defendants expanded their recall of pet food. In response to a news release by ChemNutra on April 3, 2007, Menu Foods voluntarily expanded its recall for selected "cuts and gravy" pet food products manufactured as far back as November 8, 2006. While no new brands were added, a total of twenty new varieties of pet food were added to the recall list.

41.     Also on April 5, 2007, U.S. Senator Dick Durbin announced a Senate hearing on pet food contamination. Senator Durbin announced that he wanted companies that delayed reporting potential health risks to the FDA—specifically citing Menu Foods as an example—to face penalties. The hearing was held on April 12, 2007.

## DAMAGES TO PLAINTIFF AND THE CLASS

42.     Media reports concerning the recall state that Menu Foods, and the distributors of its food, have offered to reimburse customers for any unused pet food returned. However, this proposed remedy is insufficient.

43.     As a result of buying Defendants' pet food, Plaintiffs and the Class have suffered significant damages beyond the price of the food. Many members of the Class brought animals who consumed Defendants' food to veterinarians for precautionary measures. Many Class members' pets exhibited symptoms of acute renal failure and

required veterinary treatment. Finally, many pets died as a result of consuming Defendants' products. Thus, the owners of these animals were required to pay veterinary costs, costs of euthanization in many cases, burial costs, and also lost the purchase price they paid for their animals. Plaintiffs' animals became ill, suffered acute kidney failure and died as a direct result of consuming tainted food, which was manufactured by Defendants.

44. The members of the Class should be compensated accordingly.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similarly situated who purchased food manufactured by Defendants during the period December 3, 2006 to March 16, 2007 (the "Class" and the "Class Period", respectively).

46. The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs estimate that there are hundreds of thousands of purchasers of foods manufactured by Defendants during the Class Period. Defendant Menu Foods has stated that it has received over 200,000 complaints from consumers since announcing the pet food recall. Banfield, The Pet Hospital, has estimated that as many as 39,000 pets have been sickened or killed by Defendants' contaminated food.

47. There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

    a. Whether Defendants were unjustly enriched by their sales of defective food;

    b. Whether Defendants sold contaminated pet food;

c. Whether Defendants' sale of contaminated pet food breached the implied warranty of merchantability;

d. Whether Defendants are liable under a strict products liability claim for selling contaminated pet food;

e. Whether Defendants are liable under N.J. Stat. Ann. §§56:8-1 *et seq.* for knowingly failing to disclose the material fact that Defendants' pet food was defective;

f. Whether Defendants knew the pet food was defective, yet continued to sell and profit from February 20, 2007 (or potentially December 2006) through March 16, 2007 before announcing a recall; and

g. Whether, as a result of Defendants' misconduct, Plaintiffs and members of the Class are entitled to damages, equitable relief and/or other relief, and the amount and nature of such relief.

48. The claims of Plaintiffs are typical of the claims of the Class because Plaintiffs, like all members of the Class, unknowingly purchased defective foods manufactured by Menu Foods. Plaintiffs have no interests antagonistic to those of the Class, and Menu Foods has no defenses unique to Plaintiffs or the Class.

49. Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

    a.    It is economically impractical for members of the Class to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

    b.    The Class is readily ascertainable and definable; and

    c.    Prosecution as a class action will eliminate the possibility of repetitive litigation.

51. Plaintiffs do not anticipate any difficulty in the management of this litigation.

## COUNT I
## (UNJUST ENRICHMENT)

52. Plaintiffs reallege and reassert each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein. During the Class Period, Defendants manufactured and sold contaminated or defective pet food, which caused the dogs and cats of Plaintiffs and the Class to suffer from acute renal failure and suffer serious injury or death.

53. As a result of the defect, members of the Class have experienced injury to their pet dogs and cats and/or have purchased a product that they would not have purchased had they known of the defect and the danger associated with the product and have thereby been damaged.

54. Defendants had knowledge of the defect in their pet food prior to the

time Plaintiffs purchased their pet food as a result of the numerous complaints that they received from their customers.

55. Despite Defendants' knowledge of the defect in their pet food, Defendants refused to inform consumers of the defect -- a material fact-- and/or issue a recall of the pet food until March 16, 2007—nearly one month after Menu Foods learned of the defect and at least eight days before ChemNutra learned of the defect—and while dogs and cats continued to be sickened by Defendants' pet food.

56. During the Class Period, Plaintiffs and members of the Class conferred upon Defendants, without knowledge of the defect, payment for their pet food, benefits which were non-gratuitous.

57. Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite Defendants' knowledge of the defect in the pet food. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable. Moreover, as part of the recall, consumers were offered refunds for only the product which they could return. Because much of the food was actually eaten by Class members' pets, there can be no reimbursement.

58. Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

## COUNT II
### (BREACH OF IMPLIED WARRANTY)

59. Plaintiffs reallege and reassert each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

60. Defendants are merchants engaged in the business of selling pet food and/or pet food ingredients. Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food was fit for the purpose for which it was intended, which was to feed cats and dogs.

61. Plaintiffs and the Class Members purchased the food manufactured by Defendants. The pet food was not fit for its ordinary purpose when it was sold because it contained either aminopterin or melamine, toxic substances that caused the animals of Plaintiffs and the Class to suffer acute renal failure.

62. Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods.

63. Plaintiffs and the Class were damaged as a result of Defendants' breach of the implied warranty of merchantability.

### COUNT III
### (STRICT PRODUCTS LIABILITY)

64. Plaintiffs reallege and reassert each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

65. Defendants are manufacturers or sellers of a product that caused harm to Plaintiffs and the Class.

66. Defendants manufactured, distributed, marketed and sold pet food products containing contaminants that were toxic to pets and indeed sickened and killed pets. Defendants' contaminated food was not reasonably fit, suitable or safe for its intended purpose, as feeding the food to dogs and cats sickened and killed many of them.

67. Defendants' food was egregiously unsafe and had no usefulness as pet food.

68. The pet food products were contaminated, defective and unreasonably dangerous when they left Defendants' control.

69. Plaintiffs and the Class did not know and could not know that the pet food they purchased and fed to their pets was contaminated and unsafe.

70. The pet food products were not altered or misused by Plaintiffs, Class members or any third party.

71. The unfit and unsafe pet food products caused Plaintiffs' and the Class' pets to become ill and/or die.

72. Defendants' unfit and unsafe pet food products have caused Plaintiffs and the Class damages, including but not limited to loss of their pets, past and future veterinary expenses and other damages which are as of yet unknown.

73. Defendants knew that pet owners throughout the United States were feeding pets the contaminated pet food manufactured by Menu Foods. As early as December 2006, Defendants knew their pet food was contaminated. Defendants knew their inaction would result in serious illness or death of cats and dogs, would cause pet owners to spend money on veterinary care, and would cause emotional devastation to pet owners. Under the circumstances, Defendants' conduct was egregious and outrageous and warrants an award of punitive damages for Plaintiffs and the Class.

## COUNT IV
## (NEW JERSEY CONSUMER FRAUD)

74. Plaintiffs reallege and reassert each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

75. The pet food manufactured by Defendants constitutes merchandise under N.J. Stat. Ann. §§56:8-1 *et seq.*

76. Defendants knowingly concealed, suppressed or omitted the material fact that Defendants' pet food was contaminated and was killing animals. Defendants admitted to the FDA that they had received complaints about their pet food as early as February 20, 2007 and that Defendants' own tests killed animals weeks before Defendants announced the recall on March 16, 2007.

77. Defendants intended for Plaintiffs and the Class to rely on such concealment, suppression or omission of material fact in connection with the sale of Defendants' pet food.

78. Plaintiffs and the Class suffered harm as a result of Defendants' violation of N.J. Stat. Ann. §§56:8-1 *et seq.*

**WHEREFORE**, Plaintiffs pray that the Court enter judgment and orders in their favor and against Defendants as follows:

A. An order certifying the Class and directing that this case proceed as a class action;

B. Judgment in favor of Plaintiffs and the members of the Class in an amount of actual damages or restitution to be determined at trial;

C. A court supervised medical monitoring program through which Class members' pets will receive periodic veterinary examinations to discover and treat the

extent of kidney damage or other harm suffered by pets as a result of consuming Defendants' tainted, recalled pet food;

      D.    An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

      E.    Such other and further relief as this Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury.

Dated: April 23, 2007

By: _____
Alan E. Sash (AS 8804)
Steven J. Hyman
MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York  10016
Tel: 212-448-1100
Fax: 212-448-0066

Arthur N. Abbey
Stephen T. Rodd
Orin Kurtz
ABBEY SPANIER RODD
ABRAMS & PARADIS, LLP
212 East 39th Street
New York, NY 10016
Tel: 212-889-3700
Fax: 212-684-5191

Attorneys for Plaintiffs